## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**MICHAEL RIGNEY,**

**Plaintiff,**

v.                                                          **CASE NO.  20-3106-SAC**

**CHRISTOPHER TRAPP, and**
**KANSAS DEPARTMENT OF**
**CORRECTIONS,**

**Defendants.**

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendants' Motion to Dismiss and for Summary Judgment (Doc. 22).  The motion is ripe for decision as Plaintiff has failed to file a timely response.  Defendants' motion is granted for the reasons stated herein.

## I.    Procedural History

On June 15, 2021, Defendants filed a Motion to Dismiss and for Summary Judgment (Doc. 22).  As required by Local Rule 56.1(f), Defendants provided Plaintiff, who is proceeding pro se, with the required notice regarding motions for summary judgment.  (Doc. 24.)  The notice was mailed to Plaintiff's address of record.  *Id*. at 2.  Plaintiff's response deadline was July 6, 2021.  *See* D. Kan. Rule 6.1(d)(2) ("Responses to . . . motions for summary judgment . . . must be filed and served within 21 days.").  On November 12, 2021, the Court entered an Order (Doc. 26) finding that Plaintiff had failed to respond by the deadline.  The Court granted Plaintiff "a final opportunity to respond to the motion" by December 3, 2021.  (Doc. 26, at 2.)  To date, Plaintiff has not filed a response to the motion for summary judgment.  Therefore, because Plaintiff has failed to timely file a response, Defendants' statement of facts set forth in the Memorandum in Support (Doc. 23) are deemed admitted.  *See* D. Kan. Rule 56.1(a) ("All material facts set forth in

the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); Fed. R. Civ. P. 56(c)(1) and (e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . .."); D. Kan. Rule 7.4.

## II.    Uncontroverted Facts

1.  Rigney alleges that on February 24, 2020, Officer Trapp entered his cell, shoved him into a metal shelf, choked him, threatened to snap his neck if he moved, called him a "chomo", and repeatedly punched him in the face.  Doc. 1 at 3.

*Inmate request to staff member*

2.  On February 24, 2020 Rigney completed an "Inmate Request to Staff Member" form.  Doc. 11 at 5.

3.  Officer Wildermuth responded on February 25, 2020.  *Id.*

*Letter to the warden*

4.   On February 26, 2020 Rigney submitted a letter to the Warden of LCF outlining the February 24, 2020 incident.  Declaration of Peggy Howard, Exhibit 1 (Doc. 23–1).

5.  On March 2, 2020 Warden Meyer responded that Rigney's "concerns are noted and were forwarded to [LCF's] Investigations staff."  Doc. 11 at 11.

*Letter to the secretary of corrections*

6.  On February 26, 2020 Rigney submitted a letter to the secretary of corrections outlining the February 24, 2020 incident.  Declaration of Darcie Holthaus, at ¶ 4 and Exhibit 1 (Doc. 23–2.)

7.  On March 4, 2020 Rigney's letter was returned to him without substantive response because the stated issues were not emergencies, and Rigney failed to show "evidence that [he] attempted

to reach an informal resolution of these matters with the staff [he] work[s] with on a direct or daily basis." Holthaus Decl. at ¶ 5; Ex. 1 at 1. (Doc. 23–2.)

***Appeals to the warden and secretary of corrections***

8.  Rigney did not appeal a response from his unit team about the February 24, 2020 incident to the warden.  Declaration of Keeton Hartley, at ¶ 4.  (Doc. 23–3.)

9.  Rigney did not appeal a response from the Warden about the February 24, 2020 incident to the secretary of corrections.  Holthaus Decl. at ¶ 6.  (Doc. 23–2.)

***Property claim***

10.   Rigney submitted a "Property Damage/Loss or Personal Injury Claim Form" dated February 28, 2020 regarding an alleged excessive use of force on February 24, 2020.  Doc. 19–12 at 1–3.

## III.    Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (c).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law" and is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).  The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment. *Pinkerton v. Colorado Dep't. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (citation omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).

IV.    **Analysis**

Defendants contend they are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies.  An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249; *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones*, 549 U.S. at 211)).  An inmate exhausts by complying with "an agency's deadlines and other critical procedural rules." *Id*

(quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).  A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein.  *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).  The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit.  *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis.  K.A.R. § 44–15–101(b).  If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections.  K.A.R. § 44–15–101(d).  The procedure to follow at each level is described in detail in Kan. Admin. Regs.  § 44–15–102; *see also Garza v. Correct Care Solutions*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd*

451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he sought relief on his claims first through his unit team, then the warden, and finally from the Secretary of Corrections).

Defendants argue that Plaintiff failed to exhaust these available remedies. Defendants support their argument with an affidavit from Corrections Manager Darcie Holthaus. She attests that she reviewed the records maintained by the KDOC regarding grievances and found that Plaintiff's letter to the Secretary of Corrections was returned to Plaintiff because he failed to follow the appropriate procedures for grieving issues involving KDOC correctional staff. (Doc. 23–2, at 1–2.) She found no grievances appealed to the Secretary of Corrections regarding the alleged excessive force on February 24, 2020. *Id*. KDOC Corrections Supervisor Keeton Hartley also submitted a declaration stating that there are no records showing that Plaintiff appealed a grievance to the Warden regarding the incident. (Doc. 23–3, at 1.) Because Plaintiff did not complete the KDOC's review process, Defendants contend that Plaintiff failed to exhaust his remedies and that summary judgment is appropriate. *See Jernigan*, 304 F.3d at 1032 (holding an inmate failed to exhaust his administrative remedies when he did not complete all three required written steps).

Permitting Plaintiff to disregard the KDOC's formal grievance procedure and pursue his remedies on his own timeframe would contradict the purposes of the PLRA. *Woodford* is firm that exhaustion must be proper, and here, Plaintiff clearly did not exhaust all of his available remedies. To *properly* complete the grievance process, Plaintiff needed to go beyond the first two steps and submit a grievance to the warden and then appeal to the secretary of corrections following the time frames mandated by K.A.R. 44-15-102. Plaintiff may have attempted to grieve his issues by simultaneously sending letters to the Warden and Secretary of Corrections, but—despite Doug Burris advising him of the deficiencies in his letter and how to correctly grieve the issues raised in

them—Plaintiff did not follow the instructions and complete the grievance process.  *See* Doc. 23–2, at 3.

The fact that Plaintiff filed a personal injury claim regarding the same incident does not render his claims exhausted.  As this Court has previously found, there are two distinct avenues of administrative exhaustion established in Kansas law:

> The first avenue is found in the regulations codified by Article 15 of chapter 44 of the Kansas Administrative Regulations. These regulations govern inmate grievances covering "a broad range of matters that directly affect the inmate, including" complaints about policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility.  Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B).   As the Court previously determined, this regulation applies to a constitutional claim such as the one asserted here, where the conduct complained of stems from "actions by employees" of the prison facility.  *Id*. § 44–15–101a(d)(1)(B).

*Lewis v. Carrell*, 2015 WL 413640, at *2–3 (D. Kan. 2015).  "The second avenue is governed by the regulations in Article 16 of chapter 44 of the Kansas Administrative Regulations."  *Id*. at *3. Kan. Admin. Regs. § 44–16–104a applies to claims for personal injury and provides: "(a) Each inmate claim for personal injury shall be submitted to the [prison] facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury."  *Id*. (citing Kan. Admin. Regs. § 44–16–104a).

The Kansas Court of Appeals has explained that the two sets of regulations found in Articles 15 and 16 are "separate and distinct" from one another.  *Id*. (citing *Redford v. Kan. ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. Ct. App. Mar. 1, 2013 ) (unpublished table decision)).  Indeed, the regulation "expressly provides: 'The grievance procedure [in article 15] shall not be used in any way as a substitute for, or as part of, the  . . . property loss or personal injury claims procedure [in Article 16] . . .'"  *Id*. (quoting Kan. Admin. Regs. § 44–15–101a(d)(2);

*see also Sharrock v. Stephens*, 2011 WL 5526444, at *1 (D. Kan. 2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101.").

The Court in *Conley* addressed defendants' argument that plaintiff failed to file a personal injury claim in a § 1983 case, and noted that while case law establishes that exhaustion of Article 15's procedures alone is not sufficient for a plaintiff to assert a personal injury claim, the Court "had not located any authority requiring an inmate to exhaust both the requirements of Article 15 and Article 16 before asserting a § 1983 claim based on an alleged violation of an inmate's constitutional rights" and declined to invent such a requirement. *Conley v. Pryor*, 2015 WL 413638, at *14 (D. Kan. 2015). However, the Court did find that exhaustion under § 44–15–101 was necessary for plaintiff's § 1983 claim. *Id*. The Court found that where plaintiff asserted a § 1983 claim for failure to provide proper dental care, plaintiff's claim constituted a complaint about the conditions of his imprisonment and the actions of employees, which requires exhaustion under Kan. Admin. Regs. § 44–15–101. *Id*. Likewise, the Court in *Nunez*, stated that "an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act." *Nunez v. Heimgartner*, 2017 WL 2264466, at *5 (D. Kan. 2017) (citation omitted). The Court held that "Article 15 of the KDOC regulations covers the administrative procedures that must proceed a § 1983 claim." *Id*. at *6 (citation omitted); *see also Jones v. Parks*, No. 19-cv-3175-HLT-GEB, Doc. 50 at n.3 (D. Kan. April 13, 2021) ("Plaintiff's alleged personal injury claims based off the same incidents does not exhaust his § 1983 claim.").

The undisputed evidence shows that Plaintiff failed to exhaust his administrative remedies regarding the allegations in his lawsuit. Under the PLRA "a prisoner must exhaust his

administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." *Little*, 607 F.3d at 1249 (citations omitted). Accordingly, Plaintiff's Complaint should be dismissed without prejudice.[1]

## V.    Conclusion

Defendants are entitled to summary judgment in their favor because Plaintiff failed to exhaust his available administrative remedies prior to filing suit. The case is dismissed without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss or for Summary Judgment (Doc. 22) is **granted.**

**IT IS FURTHER ORDERED** that this case is **dismissed without prejudice.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery (Doc. 25) is **denied as moot.**

**IT IS SO ORDERED**.

**Dated December 9, 2021, in Topeka, Kansas.**

**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**

---

[1] In light of the dismissal for failure to exhaust, the Court need not reach Defendants' arguments regarding Eleventh Amendment immunity. Furthermore, to the extent Plaintiff raises any state law claims, the Court declines to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Baker v. Bd. of Regents*, 991 F.2d 628, 634 (10th Cir. 1993) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) ("Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). "[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).